**In re Sonya M. REIS, Debtor.**

**No. 01–13191–JNF.**

United States Bankruptcy Court, D. Massachusetts.

Feb. 28, 2002.

Mary Jeanne Stone, Belford & Stone, Fall River, MA, for Debtor.

Brian J. Sullivan, Fall River, MA, for Antero Caterina.

**MEMORANDUM**

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matter before the Court is the Debtor's Objection to the Supplemental Proof of Claim filed by Antero Caterina ("Caterina" or the "claimant"). In the supplemental Proof of Claim, the claimant asserts that $5,500 of the debt owed to him by the Debtor, Sonya M. Reis (the "Debtor"), is nondischargeable pursuant to 11 U.S.C. § 523(a)(8). In her objection to proof of claim, the Debtor contends that because the loan by Caterina was not made or guaranteed by a governmental entity or a nonprofit institution, he is not entitled to the benefit of § 523(a)(8)'s exception to discharge. The issue presented is whether the $5,500 debt owed to Caterina is a nondischargeable student loan under 11 U.S.C. § 523(a)(8) that would not be discharged upon completion of the Debtor's Chapter 13 Plan. *See* 11 U.S.C. § 1328(a)(2).[1] On January 24, 2002, after a hearing, the Court took this matter under advisement.

## II. BACKGROUND AND PROCEDURAL HISTORY

■ The facts necessary to decide this contested matter are undisputed. The Debtor is the daughter of Maria F. Reis and Antonio M. Reis ("Mr. & Mrs. Reis") and the granddaughter of the claimants, Antero and Amelia Caterina (collectively the "Caterinas"). Prior to the filing of the Chapter 13 petition, the Caterinas made allegations that the Debtor and Mr. and Mrs. Reis converted monies that the Caterinas had entrusted to them. The Caterinas filed a civil action against the three members of the Reis family in the Bristol County Superior Court, Docket No. A99–01576. On January 26, 2001, after a bench trial, Judge Mitchell J. Sikora entered judgment in favor of the Caterinas. He determined that Mr. and Mrs. Reis and the Debtor defrauded the Caterinas, finding them jointly and severally liable to the Caterinas for the sum of $29,508. In addition, Judge Sikora entered a judgment in favor of the Caterinas and against the Debtor in the sum of $5,500, finding that

---

1.  Section 1328 provides in relevant part the following:

    (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—. . .

    (2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) or 523(a)(9) of this title; . . . .

    11 U.S.C. § 1328(a)(2).

this sum represented funds she utilized to attend hair styling school.[2]

On April 17, 2001, Sonya Reis filed a Chapter 13 bankruptcy petition.[3] On Schedule F—Creditors Holding Unsecured Nonpriority Claims, the Debtor listed the Caterinas as the holders of a claim in the amount of $5,500. She listed an additional claim held by the Caterianas on Schedule F in the amount of $14,276.60 which she described as "Legal Fees and Costs." In her Chapter 13 plan, the Debtor proposed payment of a 10% dividend to all unsecured creditors, whose claims total $62,644.24.

On September 12, 2001, the Caterinas each filed a proof of claim listing $33,639.12 as the amount owed to them by the Debtor at the time the case was filed.[4] Thereafter, on November 8, 2001, the Debtor filed an objection to the claim of Antero Caterina and a separate objection to the claim of Amelia Caterina.

A hearing was scheduled on the objections to the proofs of claims. At the hearing on January 24, 2002, the Court sustained the Debtor's objection to the proof of claim of Amelia Caterina, finding Amelia's claim to be duplicative of the claim filed by Antero Caterina. The parties agreed that any amounts due to Antero Caterina, in excess of the $5,500, constitute a general unsecured claim. The sole issue before the Court is whether the $5,500 debt is nondischargeable under § 523(a)(8).

2. Although the parties have stated in their pleadings that Judge Sikora determined that the $5,500 obligation arose out of a student loan from the Caterinas to the Debtor, he did not so find. The Superior Court did not characterize the obligation as a student loan or as an educational benefit or stipend. The parties' agreement on the state court's conclusions of law are not binding on this Court as "[P]arties may not stipulate to legal conclusions to be reached by the court." *TI Federal Credit Union v. DelBonis,* 72 F.3d 921, 928

## III.   ANALYSIS

In analyzing whether the obligation at issue is nondischargeable, the starting point is the language of the Bankruptcy Code. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' In such cases, the intention of the drafters rather than the strict language controls." *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). The Court must look "not only to a single sentence or member of a sentence, but to the provisions of the whole law, as to its object and policy." *Dalton v. I.R.S.,* 77 F.3d 1297, 1299 (10th Cir.1996) (citations omitted).

Section 523(a) provides in relevant part the following:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole

(1st Cir.1995) (quoting *Saviano v. Commissioner of Internal Revenue,* 765 F.2d 643, 645 (7th Cir.1985)).

3. Maria F. Reis and Antonio M. Reis have also filed a Chapter 13 petition before this Court.

4. The Court notes that the parties disagree as to the amount of the debt. The amount of the debt is not presently before this Court.

or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

■ With regard to the $5,500 claim, the Debtor asserts that the claim is dischargeable because it is not a student loan as defined by 11 U.S.C. § 523(a)(8). The Debtor, on the one hand, argues that only student loans funded by government and nonprofit organizations are entitled to nondischargeability protection under § 523(a)(8). Caterina, on the other hand, argues that while § 523(a)(8) pertains to governmental and nonprofit entities it also covers other student loans, and, therefore, the $5,500 debt is nondischargeable. Caterina further argues that the statute's language—"an obligation to repay funds received as an educational benefit, scholarship or stipend"—means that all student loans are nondischargeable, not simply those made or guaranteed by governmental or nonprofit organizations. His position is that the statute provides three alternatives for nondischargeability: 1) educational loans made or guaranteed by governmental entities or entities funded at least in part by the government; 2) educational loans made by nonprofit institutions; or 3) other obligations made for an educational benefit, scholarship or stipend, without regard to whether the debt is owed to a governmental or nonprofit organization. He asserts that the third clause of § 523(a)(8) should be read independently of the other provisions. Both parties stated at the hearing that they were unable to find any helpful precedent interpreting § 523(a)(8) of the Code.

Case law is sparse on the issue of whether a private student loan made by a family member is excepted from discharge under § 523(a)(8). However, there is applicable precedent on the issue of the meaning of the third clause of § 523(a)(8). In *TI Federal Credit Union v. DelBonis,* 72 F.3d 921 (1st Cir.1995), the United States Court of Appeals for the First Circuit ruled that student loans owed to a federal credit union were nondischargeable as the credit union was a governmental unit within the meaning of § 523(a)(8). In analyzing the statute's language, the court discussed the statute's restrictive language:

> In summary, Section 523(a)(8) offers two alternatives for adjudicating educational loans .... First, it provides that educational loans or benefit overpayments are nondischargeable, if issued in whole or in part by an agency qualifying as a nonprofit organization. Second, the statute also makes loans issued, insured, or guaranteed by governmental units nondischargeable. A debtor's loans, thus, are nondischargeable if they fall within the parameters of either provision.

*Id.* at 926–27. In reaching its conclusion that the exception to discharge under § 523(a)(8) protects only two categories of creditors, namely governmental units and nonprofit entities, the court relied upon the legislative history and amendments to § 523(a)(8), indicating that the statute "was enacted to prevent abuses in student loan programs." *Id.* at 936 (citing *In re Pelkowski,* 990 F.2d 737, 742 (3d Cir. 1993)). It stated:

> We are convinced that treating federal credit unions as "government instrumentalities" and, thus, "government units," is consistent with Section 523(a)(8)'s discharge-limiting purpose. "By enacting Section 523(a)(8), Congress sought principally to protect government entities

and nonprofits—places which lend money or guarantee loans to individuals for educational purposes—from bankruptcy discharge."

*Id.* at 937 (citing *In re Segal,* 57 F.3d 342, 348 (3d Cir.1995)).

Other courts have agreed that in enacting § 523(a) Congress attempted "to accomplish two tasks: (1) to safeguard the financial integrity of the educational loan program, and (2) to curb abuses by limiting instances in which student loans can be discharged in bankruptcy." *In re Flint,* 238 B.R. 676, 679 (E.D.Mich.1999) (citing *Segal,* 57 F.3d at 348–49). *See also In re McFadyen,* 192 B.R. 328, 331 (Bankr. N.D.N.Y.1995) (explaining that § 523 was enacted "to curb the abuses of the educational loan system ... and to safeguard the financial integrity of the educational loan programs."); *In re Cobb,* 196 B.R. 34, 37 (Bankr.E.D.Va.1996) (finding that Congress enacted § 523 to contribute to "the continued credibility of the student loan program which would in turn ensure its viability."); *In re Hammarstrom,* 95 B.R. 160, 163 (Bankr.N.D.Cal.1989) (stating that "[t]he legislative history also reveals, however, that Congress had an additional purpose in enacting section 523(a)(8): to preserve the financial integrity of educational loan programs. . . .The purpose of this particular amendment is to keep our student loan programs intact.")

In *In re Meinhart,* 211 B.R. 750 (Bankr. D.Colo.1997), the court ruled that § 523(a)(8)'s exception to discharge did not apply to a loan made by a for profit institution, rejecting its argument that the third clause of the statute applied to private student loans. The court reasoned:

Were this Court to accept the Plaintiff's position that the final phrase should be read independently of the former portions of the subsection, the final phrase would subsume the remainder. The former, longer lived portions of Section 523(a)(8) would, therefore, be rendered meaningless. Such a conclusion is contrary to another clear mandate of statutory construction: A statute should not be construed in a way that renders phrases meaningless, redundant, or superfluous. *Rake v. Wade,* 508 U.S. 464, 471–472, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993); *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 2132–2133, 109 L.Ed.2d 588 (1990); *In re Vause,* 886 F.2d 794, 801 (6th Cir.1989); *Seawinds Ltd. v. Nedlloyd Lines, B.V.,* 80 B.R. 181, 185 (N.D.Cal.1987), aff'd, 846 F.2d 586 (9th Cir.); cert. den'd, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *In re Kirk,* 71 B.R. 510, 515 (C.D.Ill. 1987).

211 B.R. at 754.

It is apparent that the intent of Congress was to except from discharge loans that are made, guaranteed, or funded by a governmental unit or nonprofit institution. In the present case, it is undisputed that the monies advanced to the Debtor were a loan made to her by her grandparents to enable her to attend hair styling school so that she could become a licensed beautician. The Debtor's obligation arose out of a loan extended by a private party; the loan was not made pursuant to a student loan program of a governmental unit or a nonprofit entity. Therefore, the Court rules that the debt owed to Caterina does not qualify as a student loan and does not come within the exception to discharge under § 523(a)(8).

## IV. CONCLUSION

The $5,500 debt owed to Mr. Caterina is a dischargeable debt, constituting a general unsecured claim and must be treated accordingly under the plan. The Debtor's

objection as to the character of the claim is sustained.