**In re Timothy/Jennifer KIRCHHOFER, Debtors.**

**Jennifer R. Kirchhofer, Plaintiff.**

**v.**

**Direct Loans, et al., Defendants.**

**No. 00–3163.**

United States Bankruptcy Court, N.D. Ohio.

May 2, 2002.

**164**

Randy L. Reeves, Lima, OH, for Plaintiffs.

Robert G. Young, Toledo, OH, for Defendants.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

In the instant adversary proceeding, the Plaintiff/Debtor, Jennifer Rebecca Kirchhofer, seeks to discharge certain student loan debts she owes to the Defendants, Direct Loans and the United States Department of Education. According to the Plaintiff, such debts should be found to be dischargeable in accordance with 11 U.S.C. § 523(a)(8) which provides for the dischargeability of a student loan debt if "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents[.]" In the alternative, the Debtor, in the absence of a finding of undue hardship, has asked this Court to invoke its equitable powers under 11 U.S.C. § 105(a) so as to partially discharge her student loan debts. On the issue of whether she is entitled to have her student loans discharged, the Debtor and the Defendant, the United States Department of Education, each filed a Motion for Summary Judgment together with accompanying supporting materials. After reviewing these materials, the Court finds that the facts, as set forth below, present an accurate picture of the events which transpired in this case.

In 1991 the Debtor, after graduating from high school, began to attend college. In this regard, the uncontested facts presented in this case show that over approximately the next seven years the Debtor, although never actually receiving a degree, attended three different schools: Ohio Northern University from 1991 to 1995; Wright State University from 1995 to 1997; and Sinclair Community College from 1997 until 1998. In order to finance her higher education at these institutions, the Debtor took out various student loans. The principal amount of these loans, which were consolidated in 1998, was Twenty-six

Thousand Six Hundred Two and 01/100 dollars ($26,602.01). (Defendant's exhibit # 2). The Debtor, however, has not since these loans were first incurred made any payments on the obligations, having instead obtained various deferments from the Defendant. Therefore, as the result of accruing interest and other miscellaneous charges, the total amount presently owed on the Debtor's consolidated loan is Thirty Thousand Two Hundred Forty-one and 48/100 dollars ($30,241.48). With respect to those specific circumstances relating to issue of "undue hardship," the facts presented in this case revealed the following:

The Debtor, who is 29 years of age and in good health, is married and the mother of a child born in 1998. The Debtor's employment history shows that, since graduating from high school, she has worked at various part-time positions earning just above minimum wage. The Debtor, however, has not held a job since the birth of her son. According to the Debtor, she is not presently working because to do so would "only go to pay for someone else to watch my almost two year old son grow up." (Plaintiff's Answer to Interrogatory No. 29). Along this same line, the Debtor, when asked why her financial situation would not likely improve in the future, answered by saying, "I have never had a job much [over] minimum wage, and the cost of child care and expenses of the job would equal or exceed the amount earned." (Plaintiff's Answer to Interrogatory No. 29).

With the Debtor presently not working, the Debtor's husband's provides the sole source of income for her and her son. In this regard, the evidence presented in this case revealed that the Debtor's husband recently obtained a job making approximately Two Thousand Five Hundred dollars ($2,500.00) per month, which, after accounting for mandatory deductions, re-sults in a net monthly income of approximately One Thousand Six Hundred Forty dollars ($1,640.00). (Plaintiff's Exhibit B). On the expense side of the equation, the Debtor submitted to the Court an itemized list of expenses which utilize, in full, her husband's take-home income. Include in this itemized list were the following expenses: a rental payment of $165.00; utilities of $383.00; food of $390.00; a clothing and laundry expense of $60.00; medical expenses of $70.00; total transportation expenses of $290.00; baby care/pet expenses of $85.00; and road expenses for the Debtor's husband of $130.00. No expenses, however, were listed for either entertainment or charitable contributions.

Given the little, if any, disposable income the Debtor has available, the Debtor submitted to the Court that she and her husband have had to rely on family members for help. For example, it was related to the Court that the Debtor's mother has provided the Debtor and her husband with a mobile home to live in for which they are only required to pay lot rent, utilities and maintenance. In addition, the Debtor's father-in-law recently provided her with Two Thousand dollars ($2,000.00) for the purchase price of a motor vehicle. The Debtor also related to the Court that, in addition to receiving help from family members, she has had to rely on state-sponsored assistance for herself and her child. In particular, the Debtor, in her interrogatories, stated that she is presently receiving money from a W.I.C. program (Women, Infants, and Children). (Plaintiff's Answer to Interrogatory No. 21).

On May 1, 2000, both the Debtor and her husband petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. In their bankruptcy petition, the Debtor and her husband listed just over One Hundred Eighteen Thousand dollars ($118,000.00) in general unse-

cured debt. With respect to this debt, the Debtor asserts that she and her husband only resorted to bankruptcy after having had explored other options. In particular, the Debtor asserted that she and her husband went to "Consumer Credit Counseling twice in an effort to resolve their outstanding debts which included the student loans and both times were advised that they could not be helped which resulted in the Chapter 7 Bankruptcy proceeding being filed on behalf of the Plaintiff and her spouse." (Plaintiff Memorandum in Support of Motion for Summary Judgment, at pg. 4).

## LEGAL DISCUSSION

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

The instant cause has been brought before the Court upon the Parties' Cross Motions for Summary Judgment. Federal Rule of Civil Procedure 56(c), which is made applicable to this proceeding by Bankruptcy Rule 7056, sets forth the standard for a summary judgment motion and provides for in part: A party will prevail on a motion for summary judgment when "[t]he pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). With respect to this standard, the movant must demonstrate all the elements of his cause of action. *R.E. Cruise Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir. 1975). In making this determination, the Court is directed to view all the facts in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio*

*Corp.,* 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In addition, in cases such as this where the Parties have filed Cross Motions for Summary Judgment, the Court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden of establishing the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. *French v. Bank One, Lima N.A. (In re Rehab Project, Inc.),* 238 B.R. 363, 369 (Bankr.N.D.Ohio 1999).

For reasons of public policy, Congress chose to exclude from the scope of a bankruptcy discharge those debts incurred by a debtor to finance a higher education. In enacting this exception to discharge, however, Congress recognized that some student-loan debtors were deserving of the fresh-start policy provided for by the Bankruptcy Code. As a result, Congress provided that a debtor could be discharged from their educational loans if it were established that excepting the obligations from discharge would impose an "undue hardship" upon the debtor and the debtor's dependents. *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine),* 254 B.R. 191, 196 (Bankr.N.D.Ohio 2000). Specifically, § 523(a)(8) states that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will

impose an undue hardship on the debtor and the debtor's dependents[.]

As used in § 523(a)(8), however, the term "undue hardship" is not actually defined. As a result, various tests have been developed by the courts to determine whether "undue hardship" exists under any given set of factual circumstances. In this regard, this Court, in accord with those prior decisions rendered by the Sixth Circuit Court of Appeals,[1] has employed what has become to be known as the Brunner Test to determine whether a debtor is entitled to an "undue hardship" discharge of his or her student loan obligations.

■■■ Under the Brunner Test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, a debtor must establish the existence of each of the following three elements, by a preponderance of the evidence, in order to be entitled to an "undue hardship" discharge under § 523(a)(8):

(1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987). With respect to these elements, no real dispute exists between the Parties that the Debtor has met her burden under the first prong of the Test. Specifically, the Parties do not dispute these particular facts: (1) the Debtor is presently not working; (2) the income of the Debtor's husband is just barely sufficient to cover basic living expenses for the Debtor and her child; and (3) the Debtor and her husband have had to rely on outside sources—i.e., family members and the government—to support themselves. Thus, the Court will begin its analysis by examining whether the Debtor has met her burden with respect to the second prong of the Brunner Test.

■■■ As just enumerated above, the second prong of the Brunner test requires that there exist additional circumstances which indicate that the debtor's distressed state of financial affairs is likely to persist for a significant portion of the student loan repayment period. Implicit in this requirement is that the debtor's distressed state of financial affairs be the result of events which are clearly out of the debtor's control; that is, the debtor must establish that they have done everything within their power to improve their financial situation. *Berry v. Educ. Credit Mgmt. Corp. (In re Berry)*, 266 B.R. 359, 365 (Bankr. N.D.Ohio 2000). The clear purpose of this requirement is to ensure that the hardship the debtor is experiencing is actually "undue," as opposed to the garden variety financial hardship experienced by all debtors who file for bankruptcy relief. *Miller v. U.S. Dep't of Educ. (In re Miller)*, 254 B.R. 200, 204 (Bankr.N.D.Ohio 2000).

■■■ In opposition to the Debtor's compliance with the second prong of the Brunner Test, the Defendant argues that the Debtor's financial hardship is self-imposed. Stated more specifically, the Defendant argues that the Debtor's financial adversity is not the result of events outside her control as the Debtor has, by her own admission, voluntarily declined to obtain any meaningful employment. In opposi-

---

1.  These case are, *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998).

tion to this point, however, the Debtor argues that it would be useless for her to obtain any employment because any salary that she would earn would be greatly diminished by the fact that, in addition to needing reliable transportation, she would need to obtain daycare for her child. To restate in the Debtor's own words, "I have never had a job much [over] minimum wage, and the cost of child care and expenses of the job would equal or exceed the amount earned." (Plaintiff's Answer to Interrogatory No. 29).

With respect to the Debtor's argument, the Court does not question these two assumptions: (1) the Debtor, based upon past events, will likely have a difficult time obtaining any employment much above the minimum wage; and (2) the cost of daycare for a child can be quite expensive. Nevertheless, a couple of inherent weaknesses exist in the position posited by the Debtor. First, as the Debtor and her husband are presently meeting their daily living expenses, any income earned by the Debtor, even if at around the minimum wage level, could be partially utilized by the Debtor to pay her student-loan obligations. Secondly, the Debtor has not offered any viable reason as to why she could not, at the present time, obtain some type of employment that would not require her to incur the cost of daycare for her child. In this regard, the Court finds it hard to believe that absolutely no employment opportunities exist in her geographic area that would permit her to work at a time in which her husband is at home and thus able to care for their child. Along this same line, the Court also observes that, although not usually very high paying, there are many opportunities available today for people who wish to work in the home. Furthermore, even if the Debtor could not possibly obtain employment at the present time, the whole essence of the second prong of the Brunner Test is that

the cause of the debtor's financial adversity is likely to extend into the foreseeable future. In clear contravention to this requirement, however, the Debtor, being in good health, has offered no explanation as to why she could not return to work after her child begins school. In this regard, the Court observes that the Debtor's child, being born in 1998, will most probably be starting school within the next couple of years.

Therefore, given the above considerations, it is apparent to the Court that the Debtor's desire to stay at home with her child is just that—a desire, and not a circumstance of necessity. As such, this Court in not convinced that the Debtor's inability to pay her student loans is the result of events actually outside her control as is required under the second prong of the Brunner. Accordingly, as it is a debtor's burden to establish that all three prongs of the Brunner Test have been met, the Court, as a matter of law, must find that the Debtor in the instant case has failed to establish the existence of an "undue hardship" for purposes of § 523(a)(8).

■ The Court's analysis, however, is not finished as the Sixth Circuit Court of Appeals has held that in the situation where a debtor is not otherwise entitled to receive an "undue hardship" discharge under § 523(a)(8), a bankruptcy court should still consider whether a debtor may be entitled to some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances. (e.g., a partial discharge of the student loan obligation). *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 440 (6th Cir.1998); *see also Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 198 (Bankr.N.D.Ohio 2000). As explained by the Sixth Circuit Court of Appeals, "In a

student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act." *Id.* at 439. The type of relief provided to a student-loan debtor usually involves providing the debtor with a partial discharge of his or her student loan debts, although a bankruptcy court may provide other types of relief. For example, in *In re Hornsby*, the Sixth Circuit specifically stated that a bankruptcy court, in addition to providing a debtor with a partial discharge of a student-loan debt, could provide other types of equitable relief such as instituting a repayment schedule, deferring a debtor's repayment of the student loans, or by simply acknowledging that a debtor may reopen a bankruptcy proceedings to later revisit the question of undue hardship. *Id.* at 440.

▮ The bankruptcy court's authority to partially discharge a student loan debt or otherwise provide for some other equitable remedy is found under § 105(a) of the Bankruptcy Code, which permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," so long as such an action is consistent with the Bankruptcy Act.[2] *Id.* Nevertheless, not all debtors are entitled to have their student loans reduced or otherwise adjusted. Rather, in prior cases, this Court has held that a bankruptcy court's utilization of its powers under Code § 105(a) is discretionary, and must be carefully honed in light of the facts of the case, applicable precedent and appropriate policy. *Wilcox v. Educ. Credit*

*Management,* 265 B.R. 864, 871 (Bankr. N.D.Ohio 2001); *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine),* 254 B.R. 191, 199 (Bankr.N.D.Ohio 2000). As a consequence, merely establishing that a debtor will receive a benefit by a partial discharge of a student loan obligation is insufficient, by itself, to warrant applying § 105(a) because all debtors would in some way benefit by having their student loan debts partially discharged. Instead, it is clear that a bankruptcy court should only invoke its equitable powers under § 105(a) so as to partially discharge a student loan debt if it finds that the equities of the situation tip distinctly in favor of the debtor. *Fraley v. U.S. Dept. of Ed. (In re Fraley),* 247 B.R. 417, 422 (Bankr. N.D.Ohio 2000)

▮ In determining whether the equities of the situation tip distinctly in favor of a student-loan debtor, this Court has looked primarily to whether the Debtor has, as is required under the third prong of the Brunner Test, made a good faith effort to repay the student loans. The reason for this is that inherent in the nature of any equitable ruling under § 105(a) is that one who seeks equity must also do equity. In making a determination as to whether the Debtor has acted in good faith, this Court has considered a number of different factors:

(1) whether the debtor has attempted to repay the debt;

(2) the length of time after the student loan first becomes due that the debtor seeks to discharge the debt;

**2.** Section 105(a) provides, in full, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

(3) the percentage of the student loan debt in relation to the debtor's total indebtedness;

(4) the debtor's attempts to find suitable employment;

(5) whether the debtor obtained any tangible benefit(s) from their student loan obligation;

(6) whether the debtor is using their best efforts to minimize expenses and maximize their income; and

(7) whether the debtor's troubled financial circumstances resulted from events not realistically within the debtor's control.

See Green v. Sallie Mae Servicing Corp. (In re Green), 238 B.R. 727, 736 (Bankr. N.D.Ohio 1999); In re Miller, 254 B.R. at 206.

In applying these considerations to the case at hand, it is readily apparent that such factors cut about evenly both for and against providing the Debtor with equitable relief. For example, the Debtor, who did not immediately seek bankruptcy relief, received various forbearances from the Defendant before seeking bankruptcy relief. Similarly, it is clear that the Debtor and her husband have made every effort to minimize their expenses. In addition, it is apparent that the Debtor did not obtain any tangible benefits from her student loan obligations. On the other hand, the Debtor has not made any payments on her student loan obligations, nor has the Debtor, by declining to look for employment, used her best efforts to maximize her financial potential. In this same regard, and as previously discussed, the financial difficulties facing the Debtor are not entirely the result of events outside her control. Under these circumstances, the Court, after giving the matter very careful consideration, feels that in conformance with the fresh start policy of the Bankruptcy Code, it would be better to err on the side of providing the Debtor with some relief from her student loan obligations. As for the type of relief, the Court, given the above considerations, finds that the Debtor shall be entitled to have the original amount of her consolidated loan cut in half. Furthermore, no interest shall accrue on this obligation which shall be paid over a period not to exceed twenty years.

In conclusion, the Court holds that the Debtor is not entitled to receive an "undue hardship" discharge of her student loan obligations pursuant to 11 U.S.C. § 523(a)(8). Based upon the equities of the situation, however, the Court finds that the Debtor is entitled to receive a downward adjustment in the amount owed on her student loans. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

ORDERED that the Motion for Summary Judgment submitted by the Plaintiff, Jennifer R. Kirchhofer, be, and is hereby, GRANTED in part and DENIED in part; and that the Motion for Summary Judgment submitted by the Defendant, the United States Department of Education, be, and is hereby, GRANTED in part and DENIED in part.

It is FURTHER ORDERED that the student loan obligation of the Plaintiff, Jennifer R. Kirchhofer, to the Defendant, the United States Department of Education, be, and is hereby, determined to be a nondischargeable debt in bankruptcy pursuant to 11 U.S.C. § 523(a)(8).

It is FURTHER ORDERED that the Plaintiff's nondischargeable student loan obligation to the Defendant be, and is hereby, determined to be Thirteen Thou-

sand Three Hundred One dollars ($13,-301.00) pursuant to 11 U.S.C. § 105(a). Further, no interest shall accrue on this obligation.

It is **FURTHER ORDERED** that the Defendant provide to the Plaintiff an address as to where payments on the Plaintiff's nondischargeable obligation may be tendered.

It is **FURTHER ORDERED** that the Plaintiff's minimum monthly payment obligation to the Defendant is hereby determined to be Fifty-five and 42/100 dollars ($55.42). This obligation will become due on the first day of every month, commencing upon the Defendant's compliance with the above order, and will last until the amount determined nondischargeable herein is paid in full.