**In re Martha SIEGEL, Debtor.**

**Martha Siegel, Plaintiff,**

v.

**U.S.A. Group Guarantee Services, et al., Defendants.**

**Nos. 01–3200, 00–34179.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 14, 2002.

Timothy Dempsey, Sandusky, OH, for plaintiff.

Matthew J. Thompson, Columbus, OH, for defendants.

### *DECISION AND ORDER*

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial held on the Plaintiff/Debtor's Complaint to determine the dischargeability of a student loan obligation. The Debtor's complaint is brought pursuant to 11 U.S.C. § 523(a)(8) which provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

As it pertains to the Debtor's cause of action under this section, the Parties, at the Trial held on this matter, raised three issues for this Court to resolve: (1) is the Debtor's student loan obligation encompassed within the scope of § 523(a)(8); (2) if it is, what is the actual amount of debt owed by the Debtor to the Defendant; and (3) do the circumstances of the Debtor's case warrant discharging the debt in accordance with the "undue hardship" standard set forth in § 523(a)(8). The uncontested facts relevant to these issues are as follows:

The Debtor, who is 47 years of age, is a single female with no dependents.

Beginning in the 1980's, the Debtor began taking classes in the subject area of occupational therapy, eventually obtaining an associate's degree in 1986 and a bachelor's degree in 1992. To finance her education the Debtor, over the course of her studies, borrowed the sum of $30,632.44.

The Debtor has, since receiving her associate's degree, made periodic payments on her loan obligation totaling at least $6,000.00.

In 1992 the Debtor consolidated all of her student loans with CitiBank.

For the past five years, the Debtor has worked in her chosen field of study. For the past year, this employment has been with the State of Ohio.

On October 6, 2000, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In her petition, the Debtor listed Fifty-two Thousand dollars ($52,000.00) in unsecured debt; included in this list of unsecured debts were the student loan obligations owed to the Defendant/Creditor, Educational Credit Management Corp. Thereafter, on Au-

gust 20, 2001, the Debtor filed the instant adversary proceeding seeking to discharge her student loan obligations on the basis that the repayment of the debts would impose upon her, as is set forth in § 523(a)(8) of the Bankruptcy Code, an "undue hardship." The only Defendant to appear and defend in this action was Educational Credit Management Corporation.

## LEGAL DISCUSSION

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

### Applicability of 11 U.S.C. § 523(a)(8).

The first issue raised by the Parties, and in particular the Debtor, concerns whether the student loan debt at issue in this case falls within the scope of § 523(a)(8). Stated in more specific terms, it is the Debtor's contention that student loans obtained from private institutions, like CitiBank, fall outside the scope of the exception to discharge set forth in § 523(a)(8).

■ Generally, under § 523(a)(8) of the Bankruptcy Code, debts incurred to finance a higher education are nondischargeable. However, by its specific language § 523(a)(8) only applies when the loan is "made, insured or guaranteed by a governmental unit" or when the loan is "made under any program funded in whole or in part by a governmental unit or nonprofit institution[.]" Thus, student loans made entirely by private entities are, in the absence of other grounds for nondischargeability, dischargeable debts within the meaning of § 523(a)(8). *See In re Reis*, 274 B.R. 46, 49–50 (Bankr.D.Mass. 2002).

■ In this case, of course, there is no disagreement that CitiBank is a private entity. However, as the above language of § 523(a)(8) clearly shows, the key question is not necessarily whether a private entity made the student loan, but instead whether the loan was insured or guaranteed by a governmental unit. *See Keilig v. Massachusetts Higher Educ. Assistance Corp. (In re LaFlamme)*, 188 B.R. 867, 869–70 (Bankr.D.N.H.1995) (mere fact that loan originates from a private entity does not take loan out of the scope of § 523(a)(8)). As a result, what the Debtor's position fails to take into consideration is that the Defendant in this case, which is undoubtably a not-for-profit organization that administers government-guaranteed student loans,[1] clearly guaranteed the Debtor's student loan. The proof of this guarantee is self-evident: After the Debtor defaulted on her student loan, the Defendant assumed legal responsibility for the debt. Furthermore, with respect to the Defendant's guarantee, the existence of such an arrangement could not have come as a surprise to the Debtor as she executed an agreement with CitiBank containing the following language:

> I understand that my SLS/ALAS Loans may be refinanced at the current annual variable rate as determined by the Secretary of the United States Department of Education (hereafter called the Secretary) in accordance with the Higher Education Act of 1965, as amended (hereafter called the Act) as a part of this consolidation.

(Plaintiff's Exhibit A). Similarly, it would seem rather incredulous for the Debtor to assume that shortly after graduating from college and without a regular source of income, that CitiBank would offer her a large loan on a completely unsecured basis. Accordingly, for the above reasons,

---

1. *See Goulet v. Educ. Credit Management*  Corp., 284 F.3d 773, 775 (7th Cir.2002).

the Court rejects the Debtor's contention that § 523(a)(8) is inapplicable in this case.

## Outstanding Balance of Debtor's Student Loan Obligation.

On the issue of the outstanding balance on the Debtor's student loan debt, there exist no dispute that the Debtor, in order to finance her higher education, borrowed the sum of Thirty–Thousand Six Hundred Thirty-two and 44/100 dollars ($30,632.44). Beyond this figure, however, the Parties dispute the relevant facts. On the one side, the Debtor claims to have paid at least Twelve Thousand dollars ($12,000.00) on her student loan obligation. The Defendant, on the other hand, while acknowledging that the Debtor has paid at least Six Thousand dollars ($6,000.00) on her student loan debt, disputes this figure, and further argues that as a result of accruing interest and other charges the Debtor presently owes Forty-four Thousand Five Hundred Thirty-three and 07/100 dollars ($44,533.07) on her student loan debt.

To substantiate their respective claims, however, rather confusing and partially unintelligible evidence was presented to the Court. In particular, much of the documentary evidence submitted to the Court relating to the outstanding balance on the Debtor's student loan is both very difficult to read and also difficult to discern in any organized manner. For example, while it is clear that the Debtor consolidated her loan in 1992 with CitiBank, it is impossible to tell from this document the exact amount that was refinanced. (Plaintiff's Exhibit A). In this respect, it is especially noted that when directly queried by the Court, both Parties acknowledged that they did not have available specific

and reliable figures as to the amount of student loan debt paid by the Debtor.

Thus, without any reliable figures, this Court is left to ascertain the Debtor's outstanding student loan debt on what credible evidence is available. In this regard, two facts stand out. First, it is known for certain that the Debtor originally borrowed the sum of Thirty Thousand Six Hundred Thirty-two and 44/100 dollars ($30.632.44) in order to finance her education. Second, the Debtor, although likely having paid more, has paid at a minimum Six Thousand dollars ($6,000.00) on her student loan debt. Therefore, given these set of facts, it is the finding of this Court that the payments made by the Debtor on her student loan debt were at least able to keep pace with the interest that was accruing on the debt. Accordingly, the Debtor's outstanding student loan obligation will be set at the original amount of the debt—i.e., $30,632.44.

## Dischargeability of Debt based upon "Undue Hardship."

Unlike some nondischargeable debts, Congress did provide for an exception to the nondischargeability of a student loan debt if it could be established that repaying the loan would impose upon the debtor or the debtor's dependents an "undue hardship." In applying the "undue hardship" standard of § 523(a)(8), this Court, in accord with those prior decisions rendered by the Sixth Circuit Court of Appeals,[2] has applied what has become to be known as the Brunner Test to determine whether a debtor is entitled to a discharge of his or her student loan debt(s). *See, e.g., Kirchhofer v. Direct Loans (In re*

---

2. These case are, *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994), and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998). It should be noted, however, that although the Sixth Circuit has applied the Brunner Test, it did not specifically adopt the test as the only means to ascertain the existence of "undue hardship."

*Kirchhofer)*, 278 B.R. 162, 167 (Bankr. N.D.Ohio 2002).

■ Under the Brunner Test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, a debtor must establish the existence of each of the following three elements, by a preponderance of the evidence, in order to be entitled to an "undue hardship" discharge under § 523(a)(8):

(1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987). In support of her compliance with the first prong of the Brunner test—that is, whether she has the "ability to pay" the debt—the Debtor's argument hinges primarily on the insufficiency of her salary to cover, after meeting necessary expenses, payments on the student loan debt. In making this assertion, the Debtor related to the Court that her monthly take-home salary is approximately Two Thousand dollars ($2,000.00), a figure which is slightly lower than her enumerated reasonable expenses which are just over Two Thousand One Hundred dollars ($2,100.00) per month. Additionally, concerning her income and expenses, the Debtor related to the Court that because of budgetary constraints she may experience a cut in the number of hours she can work. Along this same line, the Debtor related to the Court that her ability to earn income may possibly be hampered by two additional factors. First, the Debtor related to the Court that she suffers from certain medical conditions such as cataracts, hypertension, and ovarian disease. Second, the Debtor also brought to the Court's attention that she suffers from several learning disabilities.

■ After reviewing the evidence presented in this case, however, the Court finds that there are a couple of inherent weaknesses with the position posited by the Debtor. First, recent pay stubs of the Debtor, which were introduced into evidence, show that the Debtor, instead of taking home around Two Thousand dollars ($2,000.00) per month, actually takes home on average Two Thousand Five Hundred Eighty-seven and 26/100 dollars ($2,587.26) per month. (Defendant's Exhibit 2).[3] Thus, pursuant to this revised figure, even if the Court were to take the Debtor's enumerated expenses at face value, there still exists a monthly surplus in the Debtor's income of well over Four Hundred dollars ($400.00) which could be utilized to pay the student loan debt in a very reasonable period of time—i.e., approximately six years.

The second difficulty the Court has with the Debtor's position is that no corroborating evidence was put forth to substantiate the Debtor's assertion that she may experience a reduction in her salary. For example, this Court has no evidence, beyond the Debtor's self-serving testimony, that either her medical conditions or her learning disability will inhibit her ability to earn a living. In this regard, this Court has previously stated:

For purposes of the ... Brunner test, a[n] ... illness, if sufficiently debilitating and unlikely to improve, can provide

---

**3.** This figure was obtained by averaging the Plaintiff's biweekly pay stubs and then taking that average over the course of a whole year.

the basis for discharging a student loan debt. However, in line with the Congressional policy of making student loans more difficult to discharge, substantial credible evidence must be given which supports the existence of the mental illness. Although such evidence does not have to necessarily consist of extensive expert testimony, such evidence should consist of more than simply bare allegations; that is, whenever a debtor's health, whether mental or physical, is directly put at issue some corroborating evidence must be given supporting the proponent's position. For example, if properly authenticated, letters from a treating physician could be utilized.

*Swinney v. Academic Fin. Serv. (In re Swinney)*, 266 B.R. 800, 805 (Bankr. N.D.Ohio 2001) (internal citations omitted)

Therefore, given that the Debtor clearly has the means to pay her student loan obligation, together with the fact that there exist no evidence that this situation will likely change, it is the decision of this Court that the Debtor has failed to sustain her burden under the first prong of the Brunner Test. Accordingly, as it is a debtor's burden to establish the existence of all three prongs of the Brunner Test, the Court cannot find that the Debtor in this case is entitled to an "undue hardship" discharge of her student loan debt.

■ The Court's analysis, however, does not end there as the Sixth Circuit Court of Appeals has held that in a situation such as this, where a debtor is not otherwise entitled to receive an "undue hardship" discharge under § 523(a)(8), a bankruptcy court should still consider whether a debt-or may be entitled to some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances. (e.g., a partial discharge of the student loan obligation). *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 440 (6th Cir.1998); *see also Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 198 (Bankr.N.D.Ohio 2000). As explained by the Sixth Circuit Court of Appeals, "[i]n a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act." *Id.* at 439. The type of relief that may be afforded to a student loan debtor usually involves providing the debtor with a partial discharge of his or her student loan debts, although a bankruptcy court may provide other types of relief such as instituting a repayment schedule, deferring a debtor's repayment of the student loans, or by simply acknowledging that a debtor may reopen a bankruptcy proceedings to later revisit the question of undue hardship. *Id.* at 440.

■ A bankruptcy court's authority to partially discharge a student loan debt or otherwise provide for some type of alternative relief is found under § 105(a) of the Bankruptcy Code, which permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," so long as such an action is consistent with the Bankruptcy Code.[4] *Id.* Nevertheless, not all debtors are entitled to

---

4. Section § 105(a) provides, in full, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

have their student loans reduced or otherwise adjusted. Rather, in prior cases, this Court has held that a bankruptcy court's utilization of its powers under Code § 105(a) is discretionary, and must be carefully honed in light of the facts of the case, applicable precedent and appropriate policy. *Wilcox v. Educ. Credit Management*, 265 B.R. 864, 871 (Bankr.N.D.Ohio 2001); *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 199 (Bankr.N.D.Ohio 2000). As a consequence, merely establishing that a debtor will receive a benefit by a partial discharge of a student loan obligation is insufficient, by itself, to warrant applying § 105(a) because all debtors would in some way benefit by having their student loan debts partially discharged. Instead, it is clear that a bankruptcy court should only invoke its equitable powers under § 105(a) if it finds that the equities of the situation tip distinctly in favor of the debtor. *Fraley v. U.S. Dept. of Ed. (In re Fraley)*, 247 B.R. 417, 422 (Bankr.N.D.Ohio 2000).

■ In determining whether the equities of the situation tip distinctly in favor of a student-loan debtor, this Court has looked primarily to whether the Debtor has, as is required under the third prong of the Brunner Test, made a good faith effort to repay the student loans. *See, e.g., In re Kirchhofer*, 278 B.R. at 169. The reason for this is that inherent in the nature of any equitable ruling under § 105(a) is that one who seeks equity must also do equity. In making a determination as to whether the Debtor has acted in good faith, this Court has considered a number of different factors:

(1) whether the debtor has attempted to repay the debt;

(2) the length of time after the student loan first becomes due that the debtor seeks to discharge the debt;

(3) the percentage of the student loan debt in relation to the debtor's total indebtedness;

(4) the debtor's attempts to find suitable employment;

(5) whether the debtor obtained any tangible benefit(s) from their student loan obligation;

(6) whether the debtor is using their best efforts to minimize expenses and maximize their income; and

(7) whether the debtor's troubled financial circumstances resulted from events not realistically within the debtor's control.

*See Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 736 (Bankr. N.D.Ohio 1999); *Miller v. U.S. Dep't of Educ. (In re Miller)*, 254 B.R. 200, 206 (Bankr.N.D.Ohio 2000).

■ In applying these factors to the case at hand, it is apparent that the greater weight of such considerations readily go in favor of finding that the Debtor has acted in good faith with respect to her student loans, and thus is deserving of some type of equitable relief. Of particular importance in this regard is the fact that the Debtor has made significant payments on her student loan obligation. Also complimentary to this observation is the fact that the Debtor did not attempt to discharge her student loan debt immediately after it became due, but instead waited many years before filing for bankruptcy. In this same regard, it is also observed that, although the Debtor's student loan constituted a significant portion of her unsecured debt, the Debtor's bankruptcy schedules still listed other unsecured debts of an appreciable amount. It is, of course, realized that the Debtor, through her present occupation, has obtained a very real and tangible benefit from her student loan debt. This fact, however, must be balanced by the consid-

eration that the Debtor, by finding suitable employment, has done her best to maximize her income within her vocational profile. Moreover, there is no reason to suspect that the Debtor's troubled financial situation is the result of events that are reasonably within her control.

As for the type of relief, the Court, given the above considerations, finds that the Debtor shall be entitled to have her student loan obligation reduced to Sixteen Thousand Five Hundred dollars ($16,-500.00). Furthermore, no interest shall accrue on this obligation which shall be paid over a period not to exceed twelve years. In the Court's judgment, this alteration in the terms of the Debtor's student loan obligation adequately balances the Debtor's need to obtain some relief from her student loan debt, while at the same time ensuring that the Debtor, who clearly has some discretionary income available, is not afforded a windfall on an obligation from which she obtained a tangible benefit.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

*ORDERED* that the student loan obligation(s) of the Plaintiff/Debtor, Martha Siegel, to the Defendant, Educational Credit Management Corporation, be, and is hereby, determined to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(8).

It is *FURTHER ORDERED* that the Debtor's obligation to the Defendant, Educational Credit Management Corp., be, and is hereby, reduced to Sixteen Thousand Five Hundred dollars ($16,500.00) pursuant to this Court's equitable powers under 11 U.S.C. § 105(a). Further, no interest shall accrue on this obligation.

It is *FURTHER ORDERED* that the Defendant provide to the Debtor an address as to where payments on the Debtor's nondischargeable obligation may be tendered.

It is *FURTHER ORDERED* that the Debtor's payment obligation to the Defendant is hereby determined to be One Thousand Three Hundred Seventy-five dollars ($1,375.00) per year and shall be paid over a period not to exceed Twelve (12) years. Such payments shall first become due on the first anniversary of the issuance of this Decision, and shall continue to become due on each anniversary thereafter until the obligation is paid in full. Nothing in this Order prevents the Debtor from paying her annual obligation earlier and/or in installments as long as the entire amount due is paid on or before the time limit provided for herein.