**In re Mara Anne PACE, Debtor.**

**Mara Anne Pace, Plaintiff,**

v.

**Educational Credit Management Corporation, Defendant.**

**Bankruptcy No. 01–56186.**

**Adversary No. 01–02290.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Jan. 29, 2003.

Pamela N. Maggied, Columbus, OH, for Plaintiff.

Matthew J. Thompson, Nobile Needleman & Thompson LLC, Columbus, OH, for Defendant.

Michael T. Gunner, Hilliard, OH, Chapter 7 Trustee.

Alexander G. Barkan, Columbus, OH, Assistant United States Trustee.

### MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL,
Bankruptcy Judge.

The Court submits this Memorandum Opinion and Order as its findings of fact and conclusions of law. Mara Anne Pace ("Plaintiff") seeks to discharge student loan obligations based upon the "undue hardship" provision of section 523(a)(8) of the United States Bankruptcy Code ("Code"). In the alternative, the Plaintiff requests that this Court invoke its equitable powers to provide relief short of a complete discharge, pursuant to section 105(a) of the Code. The Plaintiff is opposed by the Educational Credit Management Corporation ("Defendant"). Based upon the testimony and a review of the case law and statutory provisions, the Court has determined that the Plaintiff has failed to sustain the burden of proof by a preponderance of the evidence, and is not presently entitled to receive an undue hardship discharge. The Court has also concluded that the Plaintiff has failed to establish entitlement to alternative relief, pursuant to this Court's equitable powers. A brief history will illustrate the bases for this decision.

The Plaintiff is 46 years old, and is a single parent of a 10–year–old boy. The father is located in San Diego, California, and is not presently providing any support. The father last made support payments in March 2001, but the Plaintiff has not communicated with him since 1993. No testimony was provided to demonstrate any current efforts to force support payments from the father. The Plaintiff holds a Bachelor's Degree in Humanities. She attended three different law schools in the states of Nevada and California, but failed to obtain a law degree. As of October 9, 2001, the balance due on student loans is $117,475.00, and interest at 8.25%. According to the stipulation of the parties, in October 1998, the Defendant's last invoice demanded a monthly payment in the amount of $3,000.00. The Plaintiff testified that over the years she has received numerous payment deferments.

On May 25, 2001, the Plaintiff filed the instant chapter 7 bankruptcy proceeding. She scheduled the sum of $120,855.86 in general, unsecured debt, comprised mainly of medical bills and student loans. No priority or secured debt was scheduled. The Plaintiff has disclosed routine household goods and furnishings, and there is no real property. Her source of transportation is a 1999 Honda Civic that was purchased by her father. The Plaintiff is currently employed by the Online Computer Library Center ("OCLC"). She writes service proposals to present to potential clients of OCLC. Her current salary is $42,000.00 per year, subject to modest annual increases.

The Plaintiff's current monthly budget reflects net pay of $2,468.00, and expenses in the amount of $2,458.00. The monthly expenses include items that may be considered discretionary, including $60.00 for the purchase of a computer, and $100.00 for summer camp for the son. A significant portion of the monthly budget ($250.00) is devoted to medical-related expenditures. The Plaintiff's budget reflects that she would only have a net amount of $10.00 per month to pay toward her student loans. In reviewing the budget, the Court cannot find that it contains any extravagant expenditures that should be reduced.

In addition to the marginal financial circumstances, the Plaintiff described several significant medical difficulties that impact upon her earning potential. First, she testified that she has almost total hearing loss in one ear and partial loss in the other. Second, the Plaintiff testified that she is bipolar, and has only recently obtained medication to stabilize this condition. Third, the Plaintiff testified that she contracted Hepatitis C through a blood transfusion, and as a result may require a liver transplant in the next five years. Fourth, the Plaintiff testified that she suffers from bleeding ulcers. Fifth, the Plaintiff testified that she suffers from fibromyalgia. Sixth, the Plaintiff testified that she has used alcohol to help her deal with other medical issues. Finally, subsequent to the filing, the Plaintiff required extensive dental work related to her fibromyalgia.

Significantly, the Plaintiff failed to present any medical testimony or other evidence from any physician or medical professional to corroborate these conditions, and describe the Plaintiff's prognosis. The Court can only discern from its observation of the Plaintiff that she appears to have some hearing loss and difficulty understanding questions at trial. The Plaintiff extensively described the impact the hearing loss has upon her work performance, and she referenced a surgical procedure that may provide a modest measure of relief. Unfortunately, no testimony or other evidence from the treating physician was provided to corroborate the hearing loss, and to detail the Plaintiff's prognosis.

Congress has decided that student loans in bankruptcy can only be discharged when payment, "... will impose an undue hardship on the debtor and the debtor's dependents; ..." 11 U.S.C. § 523(a)(8). The underlying statutory goal is to remedy perceived abuses of the bankruptcy system by students immediately upon graduation filing bankruptcy to discharge their loans. *In re Cheesman*, 25 F.3d 356, 359 (6th Cir.1994), *cert. denied*, 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995). As noted by one court:

> For reasons of public policy, Congress chose to exclude from the scope of a bankruptcy those debts incurred by a debtor to finance a higher education. In enacting this exception to discharge, however, Congress recognized that some student-loan debtors were deserving of the fresh-start policy provided for by the Bankruptcy Code. As a result, Congress

provided that a debtor could be discharged from their educational loans if it were established that excepting the obligations from discharge would impose an "undue hardship" upon the debtor and the debtor's dependents.

*In re Swinney*, 266 B.R. 800, 804 (Bankr.N.D.Ohio 2001).

Debtors seeking an undue hardship discharge bear the burden of proof by a preponderance of the evidence. *In re Swinney*, at 804. Typically, courts require debtors to prove the following three elements: (1) they cannot maintain, based on current income and expenses, a minimal standard of living for themselves and their dependents if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs will persist for a significant portion of the repayment period; and (3) a good faith repayment effort has been made. *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2nd Cir.1987); *In re Hornsby*, 144 F.3d 433, 437 (6th Cir.1998); *In re Siegel*, 282 B.R. 629, 634 (Bankr.N.D.Ohio 2002). It has been held that the first factor detailed above constitutes a threshold that if not met, precludes an analysis of the remaining factors. *Educational Credit Management Corp. v. Buchanan*, 276 B.R. 744, 751 (N.D.W.Va.2002). Further, it has been held that courts should not consider the lack of value or benefit of the education as a mitigating factor. *In re Rice*, 78 F.3d 1144, 1150 n. 6 (6th Cir. 1996). It has been stated that if, "... an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow ...." *In re Roberson*, 999 F.2d 1132, 1137 (7th Cir.1993).

A significant focus regarding the undue hardship inquiry centers around medical conditions that are so serious, that they impair a debtor's earning capacity for the duration of the repayment period. Medical conditions are generally reviewed in relation to the second factor of the *In re Brunner* test detailed above. As noted by one court, however, "... in line with the Congressional policy of making student loans more difficult to discharge, *substantial credible evidence must be given* which supports the existence of the ... illness." *In re Swinney*, at 805 (emphasis supplied). While extensive expert testimony may not be necessary, the evidence, "... should consist of more than simply bare allegations; ... *some corroborating evidence must be given* ..." *In re Swinney*, at 805 (emphasis supplied).

In cases where debtors have not established an entitlement to an undue hardship discharge, bankruptcy courts utilizing their authority under section 105(a) of the Code, may fashion equitable remedies to partially discharge, defer payment or modify payment schedules on student loans. *In re Hornsby*, at 438–440; *In re Fraley*, 247 B.R. 417, 422, 423 (Bankr. N.D.Ohio 2000); *In re Grine*, 254 B.R. 191, 198–200 (Bankr.N.D.Ohio 2000). This equitable power, however, should only be invoked where, "... the equities of the situation tip distinctly in favor of the debtor ... based on the simple legal maxim that one who seeks equity must also do equity...." *In re Swinney*, at 806.

Based upon a review of the facts of this case, section 523(a)(8) of the Code and case law, the Court has concluded that the Plaintiff has failed to establish by a preponderance of the evidence that she is entitled to an undue hardship discharge. Further, the Court has concluded that the Plaintiff has not established that the equities weigh in favor of this Court fashioning some sort of alternative remedy to address her student loans.

Regarding the income factor, it is clear that the Plaintiff does not live an extrava-

gant lifestyle, and there are no monthly expenditures that appear to be unreasonable. What is lacking, however, is any evidence why the father of the child is not being forced to continue to make support payments. Such payment would greatly enhance the Plaintiff's financial circumstances as well as the child's. There is significant availability of support enforcement mechanisms even across jurisdictions. The absence of testimony on this issue renders it impossible to determine that the Plaintiff has truly taken all steps to enhance her income.

The next significant gap in the evidence relates to the numerous medical conditions of the Plaintiff. The Plaintiff described at length several medical conditions that affect her work performance and hamper her ability to obtain more lucrative employment. Her testimony, however, was not corroborated by testimony or even an affidavit of any physician or other medical professional, familiar with her conditions. It is not possible to make a discharge determination without some corroboration of the medical conditions and how long they will persist. While the Court is sympathetic to the condition of the Plaintiff, and it appears that there is some hearing impairment, there is no basis in the record for this Court to conclude that this or any other condition truly impairs her earning potential for the repayment period of the student loans. The testimony of the Plaintiff alone is not sufficient considering the fact that she is seeking the discharge of more than $100,000.00 in student loans.

The final element that weighs against the Plaintiff is her payment record. She testified that she has received numerous deferments. Since 1998, however, she has made only ten payments of no more than $50.00 each. Only a total of approximately $475.00 has been paid on student loans in excess of $100,000.00. These facts do not indicate a good faith effort to pay. Further, no testimony was provided by the Plaintiff to show efforts she has made to avail herself of any alternative payment programs.

■ Finally, the Plaintiff has urged this Court as an alternative to utilize its equitable powers to fashion a remedy short of a total discharge. Based upon the state of the record, however, the Court concludes that the Plaintiff has not established any entitlement to such a remedy. Without some corroborating medical evidence, this Court cannot truly determine the nature of the Plaintiff's condition, how it impacts her income potential, and her long-term prognosis. The provision of such information may persuade the Court to invoke its equitable powers in some fashion.

Accordingly, the Court has concluded that the Plaintiff has failed to sustain her burden of proof to receive an undue hardship discharge or alternative relief, pursuant to the equitable powers of this Court.

**IT IS SO ORDERED.**