In re Thelisa R. CHAMBERS, Debtor.

Thelisa R. Chambers, Plaintiff,

v.

National Payment Center, et al., Defendants.

Bankruptcy No. 99–11229.
Adversary No. 99–1102.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Sept. 7, 1999.

Mark D. McGraw, Cleveland, OH, for Defendant.

Stephanie M. Jackson, Legal Aid Society of Cleveland, Cleveland, OH.

Richard French, Asst U.S. Attorney, Cleveland, OH.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Thelisa R. Chambers (the Debtor) filed the above-styled adversary proceeding in an effort to obtain a discharge of a $6,625.00 student loan debt pursuant to 11 U.S.C. § 523(a)(8). Upon consideration of the evidence, arguments of counsel, and an examination of the record, generally, the following findings of fact and conclusions of law are hereby rendered.

Jurisdiction is proper under provisions of 28 U.S.C. § 1334 and General Order No. 84 of this district. Core matter jurisdiction is acquired under 28 U.S.C. § 157(b)(2)(I) and (O).

The following findings of fact are not in dispute: The Debtor, a twenty-six (26) year old single mother of four children, is a high school graduate. In 1989, she successfully pursued a nine-month course of study in word processing at the Wooster Business College in Cleveland, Ohio.[1] Upon completion, she was awarded a diploma in word processing. Tuition costs totaled $9,100.00. Of that amount, the Debtor borrowed some $6,625.00 ($4,000.00 on the first loan; $2,625.00 on the second loan) in U.S. government subsidized loans to defray the tuition costs. (Exhs. 1–1 and 1–2; Jt.Exhs. 1 and 2).

Prior to and throughout the Debtor's word processing training, she received public assistance (Aid To Dependent Children), in addition to government subsidized housing, subsidized child care, and food stamps. (Exhs. 4 and 5). Upon completion of the course, her efforts to obtain a full-time position as a word processor were unsuccessful. Thereupon, she pursued and successfully completed a four month course of study in computer training where she was awarded a certificate of completion. Throughout this additional training, she and her children continued to subsist with the support of public assistance. Consequently, the Debtor worked various part-time jobs offered through a temporary job service agency earning minimum wages. Ultimately, in January of 1999, she was hired as a full-time sales assistant with a cablevision service provider earning $19,344.00. In May of 1999, she received a promotion to the position of sales coordinator with the same employer, with a current gross annual salary of $22,932.00 (Exh. 2). Although the Debtor and her children continue to receive certain government subsidies, those subsidies decreased substantially as her income increased. She receives no child support from her children's fathers. The Debtor made no voluntary payments on her educational loan. Two involuntary payments were made, however, through the U.S. Treasury Departments income tax refund offset program. The Court must determine whether the Debtor and her dependents would suffer an undue hardship if the subject student loan was not discharged in bankruptcy.

Under 11 U.S.C. 523(a)(8), the following is provided:

§ 523 Exceptions to discharge

(a) A discharge under section 727—of this title does not discharge an individual debtor from any debt—

---

1. The Wooster Business College has terminated business operations in the Cleveland area.

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

Notedly, the Higher Education Amendments of 1998, effective as of October 7, 1998, changed § 523(a)(8) to provide that all government insured loans are nondischargeable, regardless of when the loans first became due, unless the debtor can prove undue hardship.[2] The burden of proof in such matters is upon the party challenging the discharge. That burden is to be met by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 24 C.B.C.2d 1 (1991).

■ In determining whether undue hardship exists, a growing number of courts have adopted the evaluative criteria enunciated in the *Brunner* case.[3] Tacitly, the Sixth Circuit has adopted the *Brunner* test. See, *In re Cheesman*, 25 F.3d 356, 360 (6th Cir.1994); *In re Dolph*, 215 B.R. 832, 836 (6th Cir. BAP 1998). Thereunder, the debtor must demonstrate:

1) That the debtor cannot maintain, based on current income and expenses, a minimum standard of living for herself and her dependents if forced to pay the loans;

2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

3) That the debtor has made good faith efforts to repay the loan. *Id.* at 396.

■ Applying that criteria to the present case, it is undisputed that: (1) the Debtor's monthly income is less than her monthly expenses; (2) that she and her four children were below the poverty level guidelines of the U.S. Department of Health and Human Resources throughout the subject educational training period; (3) were below the poverty guideline level as of the petition filing date; (4) that her current gross income is only barely above the poverty level for a family of five; (5) she continues to receive federal subsidies for housing, child care, and food for her family; and (6) receives no child support from her children's fathers although she has fully cooperated with the local agency for human resources in the latter regard.

An examination of the Debtor's monthly budget reveals a rather tight budget for a family of five. The only questionable items are excessive monthly telephone charges ($80.00 – $120.00) and monthly manicures ($24.00). Even halving the monthly telephone cost and the total disallowance of the manicure cost for a more reasonable budget reflects monthly expenses in excess of monthly income. (i.e., monthly income = $1,636.21 vs. monthly expenses = $1,837.00.) In summary, the Debtor is barely maintaining a minimal standard of living for herself and her dependents.

No additional circumstances have been demonstrated, however, to show that the Debtor's present state of financial affairs is likely to persist for a significant portion of the twenty-five year repayment period on the student loan. The Debtor is not elderly. Indeed, she is less than 30 years old, and is in good health and suffers from no reported disabilities. She is gainfully employed on a full-time basis, has received

---

**2.** See Pub.L. No. 105–244, 112 Stat. 1581, effective October 7, 1998; See also, *In re Douglass*, 237 B.R. 652 (Bankr.N.D.Ohio 1999), Case No. 98–19804, Adv. Proc. No. 99–1155, issued August 19, 1999 (Baxter, J.).

**3.** *Brunner v. N.Y. State Higher Education Svcs.*, 831 F.2d 395 (2d Cir.1987).

one promotion since filing bankruptcy, and has potential for further promotions. Moreover, her undisputed cooperation with efforts of the local human resources agency to establish fatherhood of her children through genetic testing, conceivably, could result in her receipt of support payments for her children.

Lastly, the Court must determine whether the Debtor has made good faith efforts to repay the educational loan. Clearly, as noted above, the Debtor has made no voluntary payments on her loan obligation. Further, it is undisputed that the Debtor's income for a family of five was consistently below federal poverty guidelines until she obtained her current job position in May of 1998. Prior to this employment, she worked various minimum-waged temporary jobs to support her family while receiving public assistance. Simply stated, her impoverished financial condition prevented her from making payments.

The testimony of the Debtor was forthright and was quite credible. She has few bills other than the subject student loan debt (85% of total debt) simply because she abhors a lot of bills. (Debtor, Direct). She exudes the strong work ethic of an individual who, through tough times, has endeavored with limited education and skills to support her family through honest labor. In this regard, the Debtor's financial plight comports with one of the fundamental purposes of U.S. bankruptcy law— to provide an honest, but financially distressed, debtor with a fresh start. See, *In re Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). The Debtor was unaware of the U.S. Department of Education's income contingent repayment plan (ICRP) for student loan obligations prior to the commencement of these proceedings. Concededly, she would have participated in such program had she been advised of its availability (Debtor, Cross–Exam). The Defendant's uncontested payment projections for the Debtor under an ICRP plan would be $56.00 per month over a twenty-five year repayment period. With ICRP being an option presently available to the Debtor, she has an ability within her foreseeable future to make some repayment on the loan.

■ As noted in *Douglass, supra,* the discharge of a government subsidized or guaranteed student loan obligation is an extraordinary remedy and is to be afforded only where a debtor and her dependants would suffer an undue hardship if the loan was not discharged. As evinced herein, the Debtor is financially distressed and a total repayment of the loan would subject her and her dependents to undue hardship.

Accordingly, an amount of $3,500.00 of the subject loan balance is hereby determined to be dischargeable. The balance of the loan obligation is hereby rendered nondischargeable.

IT IS SO ORDERED.