In re Kathleen M. PARKS, Debtor.

Kathleen M. Parks, Plaintiff,

v.

Graduate Loan Center,
et al., Defendants.

Bankruptcy No. 02–17862.
Adversary No. 02–1268.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

May 7, 2003.

Elliott Ray Kelley, Cleveland, OH, for debtor.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The matter before the Court is a trial proceeding on a complaint to determine

the dischargeability of certain student loan debts pursuant to Section 523(a)(8) of the Bankruptcy Code, filed by Kathleen Parks (Debtor). Following a trial proceeding and a review of the record, generally, the following findings and conclusions are herein rendered.

Core Jurisdiction of this matter is acquired and proper under provisions of 28 U.S.C. § 157(b)(2)(A)and (I), 28 U.S.C. § 1334, and General Order No. 84 of this district.

The following findings of fact are not in dispute: On or about July 22, 2002, Debtor filed for voluntary relief under Chapter 7 of the Bankruptcy Code. On July 25, 2002, Debtor commenced the above-styled adversary proceeding to discharge her student loan debts from (1) Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA "), which is the holder of eleven (11) promissory notes executed by the Debtor in the aggregate amount of $65,713.37 plus interest; (2) Defendant Educational Credit Management Corporation ("ECMC") which is the holder of promissory notes executed by the Debtor in the aggregate amount of $46,631.00; (3) Defendant Education Resource Institute ("TERI"), which is the holder of a promissory note executed by the Debtor in the aggregate amount of $11,880.48; and (4) Defendant Key Bank USA, N.A. ("Key Bank"), which is the holder of two promissory notes executed by the Debtor in the aggregate amount of $10,350.00. The total student loan debt, including interest, is approximately $130,000.00 [1].

\* \* \* \* \* \*

Herein, Debtor seeks a discharge of her student loan debts on the basis of undue hardship. Each Defendant counters that her level of undue hardship does not rise to the degree which would allow for the discharge of her student loan obligations.

Moreover, Defendant PHEAA has filed a counterclaim requesting: (1) dismissal of Debtor's Complaint as against PHEAA; (2) an order determining the eleven student loans at issue are nondischargeable; (3) judgment in favor of Defendant PHEAA and against Debtor in the amount of $65,713.37 plus any and all associated interest, in addition to all costs associated with this adversary proceeding; (4) such further relief as the Court may deem proper.

Likewise, Defendant TERI has filed a counterclaim requesting that judgment be rendered in their favor in the amount of $10,644.64 plus interest at the rate set forth in the promissory note attached, plus costs.

\* \* \* \* \* \*

The dispositive issue is whether Debtor will suffer an undue hardship if the student loan debts are not discharged under 11 U.S.C. § 523(a)(8).

\* \* \* \* \* \*

■ Section 523 of the Bankruptcy Code provides in part:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will

---

1. The parties stipulated to the loan documents and the amounts due and owing at trial.

impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Congress has provided for an exception to the non-dischargeability of student loan debt if it can be clearly established that repaying the loan would impose upon the debtor an undue hardship. *Siegel v. U.S.A. Group Guarantee Services (In re Siegel),* 282 B.R. 629 (Bankr.N.D.Ohio 2002). See *Chambers v. National Payment Center, et al. (In re Chambers),* 239 B.R. 767 (*citing In re Douglass,* 237 B.R. 652 (Bankr. N.D.Ohio 1999)) (The discharge of a government subsidized or guaranteed student loan obligation is an extraordinary remedy and is to be afforded only where a debtor and her dependents would suffer an undue hardship if the loan was not discharged). Congress did not define "undue hardship." *Woodcock v. Chemical Bank,* 45 F.3d 363 (10th Cir.1995), *cert. denied,* 116 S.Ct. 97 (1995).

In determining whether undue hardship exists, a growing number of courts have adopted the evaluative criteria enunciated in the *Brunner* case.[2] Tacitly, the Sixth Circuit has adopted the *Brunner* test. *See, In re Cheesman,* 25 F.3d 356, 360 (6th Cir.1994); *In re Dolph,* 215 B.R. 832, 836 (6th Cir. BAP 1998). This test requires the Debtor to demonstrate: (1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; (3) that she has made a good faith effort to repay the loan. *Brunner,* at 396.

 The Debtor bears the burden of proof by a preponderance of the evidence in sustaining her position for the dischargeability of an educational loan debt on the basis of undue hardship under 11 U.S.C. § 523(a)(8). *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755, 24 C.B.C.2d 1 (1991). Once the debtor has made a showing that would support a determination that undue hardship exists, the burden of production then shifts to the educational loan creditor to present some evidence to rebut the debtor's case. *Bruen v. United States (In re Bruen),* 276 B.R. 837 (Bankr.N.D.Ohio 2001); *Brown v. Educational Credit Management,* 247 B.R. 228 (Bankr.N.D.Ohio 2000).

\* \* \* \* \* \*

 At trial, the Debtor testified she is a 48 year-old law school graduate from Cleveland State University (Cleveland–Marshall College of Law). Prior to law school, Debtor earned an Associates Degree in Business Administration (with Honors) from Southwestern College of Business, an Associates Degree in Legal Assistance (with Honors) and a Bachelor of Arts degree in Sociology (with Honors) from the University of Cincinnati. (Debtor, Direct). She is divorced with one adult child (daughter) and five grandchildren, but no dependents. She makes no regular payments to either her daughter or her five grandchildren. (Court Inquiry). She testified that she is basically in good health having no disabilities, or physical or mental impairments. (*Id.*)

A former law clerk for the Ohio Lottery Commission, Debtor currently works as a Customer Service Representative with Hyatt Legal Plans ("Hyatt"). She currently earns $27,000 annually, with annual three percent (3%) salary increments since the three years she has been with Hyatt.

**2.** *Brunner v. New York State Higher Education Services Corp. (In re Brunner),* 831 F.2d 395 (2d Cir.1987).

Debtor described her current job as pro-viding income to cover her living expenses, non-contributory benefits, and also includes three weeks vacation.

She was unsuccessful on the Ohio Bar Examination in 1999, but has not applied to retake the Ohio Bar Examination or applied to sit for any other state bar exam. She cited her need to earn a living as the reason she did not make a second attempt, and also stated that her living expenses did not allow her to set aside funds to prepare to retake the bar exam. (Debtor, Cross).

Debtor admitted that she has never considered applying for a loan to pay for bar review expenses, saying that she never wants to incur another loan again. (Debtor, Cross). Debtor testified that she filed for bankruptcy due to overwhelming credit card debt. (Debtor, Direct). She cited a $135.00 monthly tax obligation and having no surplus income. (Id.) She has a 1997 Ford Escort, on which she makes monthly payments, as well as paying utilities monthly to avoid service interruption. (Id.). She has made only one payment on her four student loan debts, which was made prepetition. (Debtor, Cross).

Debtor earns additional income performing legal research and writing for her bankruptcy attorney approximately ten to fifteen times per year, on a per project basis. She has been earning this additional income since 2000. She testified as to having a potential for earning $1,500 on these cases. (Debtor, Cross). Debtor used the law school's placement office to assist her with gaining employment, but has not used this resource since 1999. She has posted her resume on the internet, but has received no responses thus far. (Id.) She testified as to not earning enough to pay her student loans. She received PHEAA maximum deferrals or forbearance on payments. She testified that she

thinks she made a $168 payment to PHEAA, exhibiting a pre-authorized debit in the amount of $168.23 paid from Kathleen Parks to PHEAA. (Debtor's Ex. 1) She has not sought debt forgiveness to reduce payments with PHEAA.

Her testimony further revealed she contributes $15 to a 401(k) plan, and has had no tax refunds in the last two years. She asserted she has twenty payments left on her car. She pays $230.00 for Church tithes and $161.00 for Church offerings monthly, as well as making $26.00 monthly donations to World Vision.

Debtor directs approximately twenty-six percent (26%) of her income to payments which may be characterized as charitable in nature. She has $156,000.00 in total debt, including $146,000.00 unsecured debt, which comprises the $130,000.00 debt due and owing to student loans. The student loans comprise eighty-nine (89%) of her total unsecured debt.

She testified she believes she has maximized her income and minimized expenses, as well as believing it would cost $4,000 to re-take the bar exam due to the three months of income she would lose to take off from work to study.

With the exception of one payment she made (See Debtor's Ex. 1), she has made no self-initiated effort to restructure her debt through consolidation. She testified that she was contacted once regarding consolidating her student loans. (Debtor, cross). She does not know if she has the ability or potential to earn higher income, despite her having obtained a law degree, along with her secretarial, paralegal, and managerial training and work experience. She works from 8 a.m. to 5 p.m. Monday through Friday, with no evening or weekend job. She testified that she cannot study after work to prepare for a bar exam, stating that it is totally impossible

for her to study for the bar exam five days a week after work and on weekends. (*Id.*) Debtor believes her four educational degrees, including a J.D., have not allowed her to improve her present status thus far, despite her applications for promotions. Besides Hyatt and sporadic work for an attorney, she has no other income resource.

Based on a review of the trial testimony, and the record, generally, the Debtor has not met her burden to establish undue hardship under 11 U.S.C. § 523(a)(8).

The Debtor's own choices were not prudent. Twenty-six (26%) of her income goes to charitable causes, and she is making no payments on the student loans. The Debtor's assertion that it was "totally impossible" to study for the bar exam on weekends and after work is incredible. The sole $168.23 payment to PHEAA (Debtor Ex. 1) hardly constitutes a good faith effort under the third *Brunner* prong. She is physically and mentally healthy by her own admission with no dependents. She holds a J.D. from a fully accredited law school. Her testimony of being unable to improve her income and that she has currently reached her income potential, came off as being disingenuous, while only posting her resume on the internet and not resorting to in-person inquiries. Further, she testified as to having made no attempt to restructure or consolidate her loans. She has received the maximum deferrals and moratoria on payments on each obligation.

This Court has considered Debtor's briefs in support of her complaint. Debtor likens her circumstances to those found in *Cheesman*, reasoning that if a discharge under 11 U.S.C. § 523(a)(8) was granted in that case, it must be allowed here. In *Cheesman*, two $50.00 payments were made on a $14,267 total student loan debt by the plaintiffs therein. The court held the payment constituted a good faith effort, and granted judgment in the plaintiffs favor. Similarly, one payment was made by Debtor in this case. But the similarities end there. In *Cheesman*, Plaintiff had a dependent daughter who incurred expenses for private school and for a medical asthmatic condition. They also had to support a second dependent of a one-year old son. In contrast, Debtor herein testified she has no dependents and she is in good health, with no physical or mental impairments.

Although the *Cheesman* court ultimately granted Plaintiff's undue hardship motion, the court stated that "this [case] is probably as problematic a case as the court has had," finding that Plaintiffs "are in a downward spiral and will continue to go deeper in debt." *Cheesman* at 359, citing the lower Bankruptcy Court. As a result, the court held that the student loans imposed an undue hardship on the Cheesmans.

Herein, the Debtor had far more options available to her than did the Cheesmans. The Cheesmans had the expenses of two dependents, one with a medical condition incurring further expense, thrust upon them. Debtor here inexplicably chose not to study for the bar exam on weekends and after work, and not to retake it for the past four years. She chose to direct a large part of her income to charitable purposes.

It was her decision not to be proactive in looking for another position by failing to send her resume to employers directly, and instead passively posting her resume on a website that a vast population of potential employers may never see. She has no dependents, has no abnormal medical expenses, and holds a law degree, unlike the Plaintiff–Debtors in *Cheesman*. The Debtor received a discharge in her Chapter 7 case, which provided an addi-

tional $500.00 per month in disposable income. Admittedly, none of this surplus was used toward payment of her student loan obligations.

### CONCLUSION

Debtor has failed to meet her burden of proof by a preponderance of the evidence that her student loan debts should be rendered non-dischargeable under Section 523(a)(8) of the Code. Accordingly, judgment is rendered against the Debtor and in favor of Defendants PHEAA, Key Bank, TERI, and ECMC. The counterclaims of Defendants PHEAA and TERI are granted, in part, and denied, in part, insofar as each party is to bear its respective costs for this adversary proceeding.

**IT IS SO ORDERED.**