EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,
Appellant,

v.

John B. WATERHOUSE, Appellee.

No. CIV. 1:05CV75.

United States District Court,
W.D. North Carolina,
Asheville Division.

Nov. 7, 2005.

Anna S. Gorman, Poyner & Spruill, Charlotte, NC, for Appellant.

David G. Gray, Westall, Gray & Connolly, Asheville, NC, for Appellee.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on appeal from the Judgment of U.S. Bank-

ruptcy Court Judge J. Craig Whitley entered March 18, 2005. Appellant Educational Credit Management Corporation appeals Judge Whitley's order discharging a portion of the student loan debt of Debtor–Appellee/Cross–Appellant John B. Waterhouse (Appellee), arguing that because the Bankruptcy Court found Appellee had not met his burden under the three-part *Brunner* test for undue hardship, no portion of the student loan should be discharged. Appellee cross-appeals, asserting that the Bankruptcy Court should have discharged the entire amount of his student loan debt. For the reasons stated below, the Judgment of the Bankruptcy Court is reversed, and the cause remanded with instructions to reinstate the full amount of the student loan debt.

## I. STANDARD OF REVIEW

■ The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the findings are clearly erroneous. *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 510 (4th Cir.2005). The conclusions of law of the Bankruptcy Court, however, are reviewed *de novo. Id.*

"Findings of fact are clearly erroneous 'when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1166 (4th Cir.1997) (*citing Green v. Staples (In re Green)*, 934 F.2d 568, 570 (4th Cir. 1991)).

If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## II. STATEMENT OF FACTS

There is no dispute regarding the basic facts of this case. *See* Brief of Appellant, filed June 20, 2005, at 12–16; Brief of Appellee/Cross Appellant, filed August 1, 2005, at 8–9. Educational Credit Management Corporation is a government guaranteed student loan agency subject to the provisions of 11 U.S.C. § 523(a)(8). Transcript of Proceedings, February 23, 2005, *included in* Record on Appeal, filed May 4, 2005, at 1. Appellee Waterhouse is 51 years old, married, with no dependents. *Id.*, at 4, 7, 22. He enrolled in college in 1990 at the age of 37 or 38, and spent the next six years obtaining an undergraduate degree in psychology and a Ph.D. in organizational psychology. *Id.*, at 6, 21. Appellee took out student loans to finance his education and understood he was obligated to pay back the money and that, due to his age, his payments "were going to go into later years in life than a twenty year-old." *Id.*, at 5, 21. He consolidated his loans in May 2001, creating the debt at issue. *Id.*, at 2.

After graduation, Appellee spent approximately a year seeking employment in his field of training, but he has not done so since 1997 when he and his wife decided to enter the ministry. *Id.*, at 4, 6, 7. Appellee and his wife both work for the same church and both are paid equally, grossing a combined $700 per week and netting a combined $2,449.90 per month. *Id.*, at 4, 7, 9. The church provides Appellee and his

wife rent-free housing in a two-bedroom home located on the same property as the church, and the church also pays their water and sewer bills. *Id.,* at 10, 12. Appellee's duties at the church "are to support the community, to provide lessons on Sundays and during classes, [and] to visit people when they are ill." *Id.,* at 17.

Appellee filed for Chapter 7 bankruptcy on January 14, 2004, listing on the bankruptcy petition $179,834.11 in general unsecured debt. *Id.,* at 14. Of this total, approximately $68,000 represents Appellee's student loan debt and approximately $111,000 represents credit card debt, which was eventually discharged in the bankruptcy proceedings. *Id.,* at 4, 14, 22. As of the February 23, 2005, Bankruptcy Court hearing, Appellee's student loan debt was $74,736.43. *Id.,* at 2.

Appellee began adversarial proceedings on April 26, 2004, for discharge of his student loan debt pursuant to 11 U.S.C. § 523(a)(8) on the grounds that repayment of the debt would result in undue hardship. *See* Complaint, *included in* Record on Appeal, ¶ 6. During the February 23, 2005, hearing, Appellee presented testimony and an exhibit showing his family's monthly income of $2,449.90 and monthly expenses in the amount of $2,447.95. Transcript, at 8–12; Plaintiff's Exhibit 2, *included in* Record on Appeal.

At the close of the evidence and after hearing argument from counsel, Judge Whitley determined the Appellee failed to establish undue hardship. Transcript, at 36 ("I think he makes [the third *Brunner* prong], but I can't find number one and two."). Judge Whitley granted a partial discharge of Appellee's student loans for

all amounts above $51,350.00. *Id.;* Order and Judgment, filed March 18, 2005, *included in* Record on Appeal, ¶ 14.

## III. STANDARD GOVERNING DISCHARGE OF STUDENT LOAN DEBT

The discharge of student loan indebtedness in bankruptcy is governed by 11 U.S.C. § 523(a)(8) which provides:

> § 523(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . . .
>
> (8) for an education benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, *unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.*

11 U.S.C. § 523(a)(8) (emphasis added). Section 523(a)(8) does not define "undue hardship." The Bankruptcy Court used the "undue hardship" test developed in *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395 (2d Cir.1987).[1] *See* Transcript, at 33. To satisfy the *Brunner* test, the debtor must prove by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to

---

1. Although, the Fourth Circuit Court of Appeals has not explicitly "adopted" the *Brunner* test, it has applied *Brunner* in cases when making a *de novo* determination of whether a debtor had established undue hardship under 11 U.S.C. § 523(a)(8). *See Ekenasi v. Educ. Res. Inst. (In re Ekenasi),* 325 F.3d 541, 546 (4th Cir.2003). Neither party argues that *Brunner* was not the correct test, even though Appellee argued it was applied erroneously.

repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396; *see also Lowe v. ECMC (In re Lowe),* 321 B.R. 852, 857 (Bankr.N.D.Ohio 2004) (discussing the debtor's preponderance of the evidence standard). The debtor must establish each of the three prongs in order to establish undue hardship under 11 U.S.C. § 523(a)(8). *See Educ. Credit Mgmt. Corp. v. Polleys,* 356 F.3d 1302, 1307 (10th Cir.2004) ("Under the Brunner analysis, if the court finds against the debtor on any of the three parts, the … loan is not dischargeable."); *Rifino v. United States (In re Rifino),* 245 F.3d 1083, 1089 n. 4 (9th Cir.2001).

## IV. DISCUSSION

Appellee raises three issues on appeal: (1) the Bankruptcy Court erred in finding that he failed to meet his burden because he was the only party to introduce evidence; (2) the Bankruptcy Court erred in considering the economics of the Appellee's household rather than only those of the Appellee, and in "finding that [Appellee's] 'minimal standard of living' does not permit him a vehicle;" and (3) the Bankruptcy Court erred in finding that repayment of the student loan debt would not impose an undue hardship on the Appellee and his dependents. Appellant argues the Bankruptcy Court erred by discharging a portion of Appellee's student loan debt after finding the Appellee failed to meet his burden under *Brunner's* first two prongs and, therefore, he failed to show

"undue hardship" under 11 U.S.C. § 523(a)(8).

## A. Appellee's Assignments of Error

As the debtor, Appellee has the burden of proving by a preponderance of the evidence that repayment of the student loan debt would be an undue hardship. *Lowe, supra.* Appellee argues, *inter alia,* that because he was the only party to introduce evidence at the hearing, the Bankruptcy Court was required to find that he had met his burden under *Brunner* and, consequently, under 11 U.S.C. § 523(a)(8). Brief of Appellee/Cross Appellant, at 15–17.

■■■ When considering the dischargeability of a student loan under § 523(a)(8), the initial burden is on the creditor to prove only "[1] that there is a debt and [2] that the debt is for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." *Ivory v. United States (In re Ivory),* 269 B.R. 890, 893 (Bankr.N.D.Ala.2001). Once that burden is met by the creditor,[2] the burden shifts to the debtor to prove by a preponderance of the evidence that excepting the debt from discharge will be an undue hardship on him and his dependents. 11 U.S.C. § 523(a)(8). Even if the creditor does not put forth any evidence on that issue at the hearing, the debtor's burden of showing undue hardship under § 523(a)(8) is not reduced. Indeed, a creditor has no burden of proof as to the issue of undue hardship unless and until the debtor has made a sufficient showing that an undue hardship exists. *See, e.g., Parks v. Graduate Loan Ctr. (In re Parks),* 293 B.R. 900, 902 (Bankr.N.D.Ohio 2003) ("Once the

---

**2.** The parties stipulated both to the existence of the debt and that the Appellant is "a government guaranteed student loan agency subject to the provisions of 523(a)(8)." Transcript, at 1–2.

debtor has made a showing that would support a determination that undue hardship exists, the burden of production then shifts to the educational loan creditor to present some evidence to rebut the debtor's case."). Where, as here, the debtor's testimony and evidence does not meet the initial burden, the creditor is free to remain silent without fear that to do so will strengthen the debtor's case or reduce his burden. Appellee's argument here is, therefore, without merit.

Next, Appellee challenges the Bankruptcy Court's findings that "group[ ] John Waterhouse with his wife to determine their ability to pay," and that "John Waterhouse's 'minimal standard of living' does not permit him a vehicle." Brief of Appellee/Cross Appellant, at 13–14. Appellee argues that both are "clearly erroneous finding[s] of fact." *Id.*, at 14.

■ Whether it is proper to consider the economics of the family as a whole or the debtor alone in determining ability to pay, is a legal rather than factual issue. A majority of courts have determined that it is proper to consider the economics of the debtor and the debtor's spouse, as a family unit, when determining ability to pay. *See White v. United States Dep't of Educ. (In re White)*, 243 B.R. 498, 509 n. 9 (Bankr. N.D.Ala.1999) (collecting cases); *Gill v. Nelnet Loan Servs. (In re Gill)*, 326 B.R. 611, 626 (Bankr.E.D.Va.2005) ("Courts within the jurisdiction of the Fourth Circuit Court of Appeals have held that family income must be the measure of the income calculation commanded by the first *Brunner* prong."); *Murphy v. CEO/Manager, Sallie Mae (In re Murphy)*, 305 B.R. 780, 795 (Bankr.E.D.Va.2004). Appellee cites no cases to the contrary that support his position. There was no error in the Bankruptcy Court's consideration of the Appellee and his wife as a family unit to determine ability to pay.

■ Appellee also argues that "the court seems to be finding that John Waterhouse's 'minimal standard of living' does not permit him a vehicle." Brief of Appellee/Cross Appellant, at 14. On this issue, the Bankruptcy Court stated:

[T]he cars are a sticking point and, again, when we go back to what is not just a modest income or expenditure level but a minimal lifestyle, we are talking about survival rations and not much more. Keeping one car, certainly I think would be within the modern concepts of minimal. Keeping two is not. And giving him the benefit of the doubt, I think three hundred and ninety-six dollars representing the pickup, being the smaller of the two [monthly vehicle payment] numbers, would have to be counted back in when you talk about what has got to be available. Desirable, yes. Minimal, no.

Transcript, at 34–35. As the Bankruptcy Court correctly noted, the issue is whether the debtor can maintain a *minimal* lifestyle while repaying the student loan debt, not whether he can live as he would necessarily like. On the facts before the Bankruptcy Court, it cannot be said that there is clear error in the Bankruptcy Court's determination that the presence of two fairly new vehicles in a two-person household where both spouses work together at the same church (which is located on the same property as their home) was not consistent with a minimal standard of living.

However, even aside from the "one car-two car" debate, a further issue exists as to whether it is minimal for Appellee and his wife to have combined monthly payments for two vehicles that total $907.95, or 37 percent of both the $2,449.90 combined monthly income and $2,447.95 total monthly expenses. *Id.*, at 7, 9, 10, 18; *see also*, Plaintiff's Exhibit 2. Even removing

the wife's vehicle from the equation and considering only half of the other monthly obligations, as Appellee argues, his vehicle payment of $396.87 amounts to 34 percent of his portion of the monthly expenses of $1,166.65 [3] and 32 percent of his net monthly income of $1,224.95. *Id.* The issue then is not whether "John Waterhouse's 'minimal standard of living' [does or] does not permit him a vehicle," but whether the Appellee can be considered as living a "minimal" lifestyle, and shift the burden of paying his voluntarily-assumed educational debt to the American taxpayers. The Bankruptcy Court determined that he could not, and this Court finds no error in that determination.

■ Finally, Appellee argues the Bankruptcy Court erred by not finding that "repayment of the student loan debt will impose an undue hardship on the debtor and the debtor's dependents." Brief of Appellee/Cross Appellant, at 10. The Bankruptcy Court determined that Appellee failed both of the first two *Brunner* prongs and, therefore, failed to establish undue hardship under 11 U.S.C. § 523(a)(8). Transcript, at 36 ("I think he makes [the third] element, but I can't find number one and two."). The Bankruptcy Court's decision regarding undue hardship is a question of law and is reviewed *de novo*. *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1204 (10th Cir.2005).

■ The first prong of the *Brunner* test requires a debtor to prove that he could not, based on current income and expenses, both repay his student loan debt and maintain a minimal standard of living. *Brunner*, 831 F.2d at 396. The court must give consideration not only to the amount of monthly income and monthly expenses, but also whether the expenses are reasonably part of a "minimal standard of living." [4] *See Perkins v. Pa. Higher Educ. Assistance Agency (In re Perkins)*, 318 B.R. 300, 305 (Bankr.M.D.N.C.2004) (stating that whether a debtor has minimized her expenses "requires the court to examine the reasonableness of the expenses listed in the Plaintiff's budget."). While Appellee's evidence shows a household monthly surplus of only $1.95, the evidence does not establish that the components of Appellee's monthly expense total are necessary for the "minimal standard of living" required under *Brunner's* first prong. Plaintiff's Exhibit 2, *supra*.

■ As discussed *supra*, Appellee's truck payment is $396.87, which represents 34 percent of his "share" of the monthly household expenses. If Appellee and his

---

3. The total monthly obligations for Appellee's household are $2,447.95, of which $396.87 represents the monthly payment on his 2001 Chevrolet pickup, and $511.08 is the monthly payment on his wife's 2002 Buick LeSabre. Transcript, at 9; Plaintiff's Exhibit 2. Subtracting these two amounts from the total obligations, and then dividing the total in half, results in a sum of $769.78 for the Appellee's "share" of all other household obligations. Adding back his truck payment results in a total of $1,166.65, which represents 34 percent of this figure.

4. Some courts also consider whether a debtor is maximizing his income under this first prong, while others consider it under the second or third prong. *See Flores v. United States Dep't of Educ. (In re Flores)*, 282 B.R. 847, 854 (Bankr.N.D.Ohio 2002) (considering maximization of income under the first *Brunner* prong); *Storey v. Nat'l Enter. Sys. (In re Storey)*, 312 B.R. 867, 872–73 (Bankr. N.D.Ohio 2004) (considering maximization of income under the second *Brunner* prong); *Polleys*, 356 F.3d at 1309 (considering maximization of income under the third *Brunner* prong). Since the Bankruptcy Court addressed "maximization of income" in discussing the second *Brunner* prong, the Court's consideration of this issue will also be conducted under the second prong. *See* Transcript, at 35.

wife are considered as a family unit, their two combined vehicle payments account for 37 percent of their total monthly obligations and consume 37 percent of their combined monthly incomes. While it is certainly within a "minimal standard of living" for a family to have a vehicle, the Appellee has failed to establish that having two vehicles is within a "minimal standard of living" for a two-member household where both spouses work together; do some, if not most, of their work at the same site; and their home is located on the same property where they work. Even if having two cars in this household is within a "minimal standard of living," it is certainly not within a "minimal standard of living" for Appellee to spend $396.87— 32 percent of his net monthly income—or for the household to spend $907.95 each month on automobile payments.

Additionally, the Bankruptcy Court also noted Appellee's budget included $110.00 per month for his telephone. *See* Transcript, at 35; Plaintiff's Exhibit 2. Appellee made no attempt to explain why such a large sum was budgeted for telephone service, much less why this amount is reasonable in light of the "minimal standard of living" he is required to show under *Brunner's* first prong.

 A student loan covered by 11 U.S.C. § 523(a)(8) is only dischargeable upon a showing of undue hardship—with the key word being "undue," not "hardship." While it may be a hardship for Appellee to reduce some expenses (such as the telephone bill) or trade his truck for a more affordable vehicle (or simply maintain one vehicle in the household) to allow for repayment of his voluntarily incurred student loan debt, it is not an *undue* hardship. As this Court has previously stated, *Brunner's* "minimal standard of living" does not require a debtor to live in squalor. *Vermont Student Assistance Corp. v.*

*Coulson (In re Coulson)*, 253 B.R. 174, 178 (W.D.N.C.2000) ("The debtor need not show that her income is below the poverty level to be considered a 'minimal' standard of living."). However, it also does not allow a debtor to live "above his means" and then obtain a discharge of more than $70,000.00 in student loan debt by merely showing that his expenses consume virtually all of his income. *See In re Perkins, supra* (analyzing the budget of a debtor who asserted that she could not repay her student loans because her monthly expenses exceeded her monthly income). The Appellee failed to carry his burden regarding the first prong of the *Brunner* test and, therefore, failed to make a showing of undue hardship as required by 11 U.S.C. § 523(a)(8).

 Even if Appellee could satisfy the first *Brunner* prong, he could not satisfy the second, which requires him to prove "that additional circumstances exist indicating that this [inability to maintain a minimal standard of living and also repay the student loan debt] is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. Examples of "additional circumstances" considered by other courts include " 'psychiatric problems, lack of usable job skills, or severely limited education,' " and " 'illness, recent disability, or an exceptionally large number of dependants.' " *United States Dept. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 92 (5th Cir.2003) *(quoting In re Roach*, 288 B.R. 437, 445 (Bankr.E.D.La.2003)); *In re Alderete*, 412 F.3d at 1205 *(quoting In re Alderete*, 289 B.R. 410, 418 (Bankr.D.N.M. 2002)). While this is not an exhaustive list of possible "additional circumstances," it demonstrates that they "must be beyond the debtor's control, not borne of free choice . . . ." *Oyler v. Educ. Credit Mgmt.*

*Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir.2005).

The Appellee has not shown the existence of any "additional circumstances;" he did not present evidence of any illness, recent disability, or psychiatric problems, but rather testified that he was a healthy individual. Transcript, at 13, 22. Nor did he offer evidence that he lacks usable job skills or has a severely limited education; on the contrary, he holds an undergraduate degree in psychology and a Ph.D. in organizational psychology. *Id.*, at 5–6. Finally, Appellee testified that no one depends on his income other than he and his wife, who is also employed. *Id.*, at 22.

Rather than presenting evidence of "additional circumstances," Appellee argues that he should not be required to repay his student loan debt because "the time period for repayment would be approximately 20 years, significantly beyond the work income expectancy of a 51 year old individual," and because he has a low-paying job from which "income would incrementally increase as would the regular living expenses, not providing any significant change in his ability to pay for the future." Brief of Appellee/Cross Appellant, at 12. Neither of these arguments satisfies the second prong of *Brunner*.

■ Appellee incurred his student loan when he returned to school at the age of 37 or 38, and testified that he understood he had to repay the loans and that he was "incurring student loans that were going to go into later years in life." Transcript, at 21. He cannot now use his age as grounds to avoid repaying the loans, as "[t]he fact that this obligation will persist into [the debtor's] late age is the result of [his] choosing to return to school on borrowed money at the age of [37 or 38]." *Mandala v. Educ. Credit Mgmt. Corp. (In re Mandala)*, 310 B.R. 213, 222 (Bankr.D.Kan. 2004).

■ While Appellee may have a low-paying job without the current prospect of a significant increase in income, he is in that position of his own choosing. While his job choice may be both noble and laudable, it is not an effort to maximize his income and is no basis to excuse repayment of over $70,000.00 in student loan debt. "[W]e are talking about not just your average run of the mill credit card debt but a student loan that was funded at taxpayer expense and without regard to the creditworthiness of the debtor, in which case it wouldn't have been paid." Transcript, at 35. Many courts have held that making the choice to take a low-paying job—regardless of how noble the profession—cannot merit undue hardship relief. *See, e.g., In re Oyler, supra.*

> [Debtor's] choice to work as a pastor of a small start-up church cannot excuse his failure to supplement his income so that he can meet knowingly and voluntarily incurred financial obligations. By education and experience he qualifies for higher-paying work and is obliged to seek work that would allow debt repayment before he can claim undue hardship.... [Debtor's] decision not to maximize his earnings, though commendable, was voluntarily made after he also voluntarily incurred the debt that he now wishes to discharge.

*Id.* Debtors must do "everything within their power to improve their financial situation" before they can show that a current inability to both maintain a minimal standard of living and repay student loan debt is likely to persist throughout much or all of the loan repayment period. *In re Storey*, 312 B.R. at 872. Looking for work in his field of training for only one year after graduation (more than eight years ago) and failing to actively seek additional or higher paying work even if outside his

field, does not indicate the Appellee was doing "everything within [his] power to improve [his] financial situation." *Id.*

The Bankruptcy Court correctly found that the Appellee did not satisfy the first or second prong of the *Brunner* test and, therefore, did not satisfy his burden of showing that repayment of his student loans would be an undue hardship under 11 U.S.C. § 523(a)(8).

## B. Appellant's Assignment of Error

■■■ The only remaining issue is whether "[a]fter concluding that the Debtor failed to meet his burden under *Brunner's* first two prongs, . . . the bankruptcy court [should] have partially discharged Debtor's student loans." Brief of Appellant, at 7. The Fourth Circuit Court of Appeals has not directly addressed the issue of whether student loan debt may be partially discharged even though the debtor has failed to establish undue hardship as required by 11 U.S.C. § 523(a)(8).[5] However, the Tenth, Sixth, Eleventh, and Ninth Circuits have addressed this issue and all agree that student loan debt cannot be discharged, wholly or partially, without satisfying the undue hardship requirement of § 523(a)(8). *See In re Alderete,* 412 F.3d at 1207 ("Because the Bankruptcy Court found that no undue hardship existed, it lacked the power to grant a partial discharge."); *Miller v. Pa. Higher Educ. Assistance Agency (In re Miller),* 377 F.3d 616, 622 (6th Cir.2004) ("In sum, we stress that the requirement of undue hardship must always apply to the discharge of student loans in bankruptcy—regardless of whether a court is discharging a debtor's student loans in full or only partially."); *Hemar Ins. Corp. of Am. v. Cox (In re*

*Cox),* 338 F.3d 1238, 1243 (11th Cir.2003) ("The bankruptcy court's equitable powers, however, no not allow it to override the specific statutory language found in § 523(a)(8) [by issuing a partial discharge without a showing of undue hardship]."); *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman),* 325 F.3d 1168, 1175 (9th Cir. 2003) ("We therefore conclude that before the bankruptcy court can partially discharge student debt . . . it must first find that the portion being discharged satisfies the requirements under § 523(a)(8).").

There are three basic rationales behind requiring a debtor to prove undue hardship before discharging even a portion of a student loan debt. The first rationale is based on principles of statutory construction. Section 105 of the Bankruptcy Code, the section typically relied on by debtors who argue that partial discharges should not be subject to § 523(a)(8)'s undue hardship requirement, is a general, equitable section of the Code. *See, e.g., In re Cox, supra.* On the other hand, § 523(a)(8) is a very specific section of the Code dealing explicitly with the discharge of student loan debt. Based on established principles of statutory construction, general statutes do not control more specific statutes unless there is clear Congressional intent to the contrary. *Id.,* at 1243 ("It is a well settled rule of statutory interpretation that '[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.'" (*quoting Morton v. Mancari,* 417 U.S. 535, 550–51; 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974))).

---

**5.** The Fourth Circuit has held that " § 523(a)(8) explicitly precludes the discharge of the Debtors' student loan debts absent a showing of undue hardship," and that "under the plain language of § 523(a)(8) . . ." [there can be no] partial discharge of the interest on [a debtor's] student loan debts without a showing of undue hardship." *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch),* 258 F.3d 315, 324 (4th Cir.2001).

The second rationale is that failure to require a showing of undue hardship before granting a partial discharge would render § 523(a)(8) a virtual nullity. Debtors could simply bypass the strictures of § 523(a)(8) by turning to § 105, and thereby have a majority of their student loan debt discharged merely on an "equity" argument without having to establish the more pointed "undue hardship." *See In re Miller*, 377 F.3d at 622 (noting the logical inconsistency between allowing bankruptcy courts to grant a full discharge of student loan debt only upon a showing of undue hardship, but at the same time allowing a bankruptcy court to "grant a partial discharge—including a discharge in excess of fifty percent of outstanding student loan obligations—for whatever reason it views as being encompassed by the court's equitable authority under § 105(a)."). Congress clearly established the requirements of § 523(a)(8) so as to make discharge of student loan debt the exception and not the rule. *See In re Cox*, 338 F.3d at 1243 ("Considering the evolution of § 523(a)(8), it is clear that Congress intended to make it difficult for debtors to obtain a discharge of their student loan indebtedness."). By allowing student loan debt to be partially discharged without a showing of undue hardship would contravene both the clear language of, and Congressional intent behind, § 523(a)(8).

Finally, as both the Tenth and Eleventh Circuits have stated, the language of § 523(a)(8) requiring a debtor to prove undue hardship before student loans may be discharged is clear, and "[t]o allow the bankruptcy court, through principles of equity, to grant any more or less than what the clear language of § 523(a)(8) mandates would be tantamount to judicial legislation and is something that should be left to Congress, not the courts." *Id.* (quotations omitted); *In re Alderete*, 412 F.3d at 1207 (*quoting In re Cox*).

With no Fourth Circuit opinion directly on point, and finding the foregoing rationales persuasive, this Court follows the decisions of the Tenth, Sixth, Eleventh, and Ninth Circuits in holding that no student loan debt subject to § 523(a)(8) may be discharged in whole or in part without a showing of undue hardship by the debtor. Consequently, the Bankruptcy Court's partial discharge of Appellee's student loan debt without a showing of undue hardship was in error, and the full debt should be reinstated on remand.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that Appellant's appeal from the Judgment of United States Bankruptcy Court Judge J. Craig Whitley, entered March 18, 2005, is **GRANTED;** Appellee/Cross Appellant's appeal is **DISMISSED;** and that portion of the Judgment partially discharging Appellee's student loan debt without a finding of undue hardship is **REVERSED.**

This matter is remanded to the Bankruptcy Court for reinstatement of the full amount of Appellee's student loan debt.